IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JHEN SCUTELLA, | ) | |
|     Plaintiff | ) | C.A. No. 17-222 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| PATROLMAN JAMES COUSINS 3RD, | ) | |
| et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

### A. Relevant Procedural History

On August 15, 2017, Plaintiff Jhen Scutella initiated this civil rights action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, against Defendants Patrolman James Cousins 3rd ("Cousins"), Patrolman Robert Williams ("Williams"), and Lt. Goozdich ("Goozdich"), all of whom are officers with the City of Erie Police Department.[1] In his complaint, Plaintiff asserts numerous claims stemming from the seizure of his vehicle on October 14, 2014, and subsequent criminal charges that were filed and prosecuted against him. In particular, Plaintiff alleges claims of retaliation, unreasonable search and seizure, violation of due process, conspiracy, malicious prosecution, and a state law claim of intentional infliction of emotional distress.

---

[1] Attorney Timothy McNair subsequently entered an appearance on behalf of Plaintiff on May 8, 2018, but did not amend the original *pro se* complaint, which remains the operative pleading in this case.

This case was initially assigned to United States District Judge Arthur J. Schwab, as presiding judge, and was referred to the undersigned, who was then a United States Magistrate Judge, for all pretrial proceedings. On September 14, 2018, the undersigned was sworn in as a United States District Judge, and this action was subsequently reassigned to the undersigned, as presiding judge, on September 21, 2018.

Now pending before the Court is Defendants' motion for summary judgment [ECF No. 42], in which Defendants' assert, *inter alia*, that Plaintiff's claims of retaliation, unreasonable search and seizure, violation of due process, and intentional infliction of emotional distress are barred by the applicable two-year statute of limitations, and that Plaintiff has failed to establish his claims of malicious prosecution and conspiracy as a matter of law. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 64], in which he appears to have withdrawn all claims other than his malicious prosecution and conspiracy claims, acknowledging that the withdrawn claims "are barred by res judicata and the statute of limitations." (Id. at p. 4). Thus, the Court will grant summary judgment in favor of Defendants with regard to such claims and will only consider the viability of the malicious prosecution and conspiracy claims at this stage. This matter is now ripe for disposition.

### B. Relevant Factual History[2]

On the evening of October 14, 2014, Plaintiff drove his friend, Chaz Mathis ("Chaz"), to Hunter's Tavern ("Hunter's") in Plaintiff's white 2006 Dodge Ram truck. (ECF No. 42-1, at ¶¶

---

[2] The factual history set forth herein has been gleaned from Defendants' concise statement in support of motion for summary judgment [ECF No. 42-1], to the extent the facts set forth therein are unopposed and/or amply supported by the evidence of record.

2-3). At Hunter's, Plaintiff and Chaz met up with Chaz's two cousins, Shannon and Shanique Mathis. (Id. at ¶ 4). The four left Hunter's in Plaintiff's white truck and traveled to Country Fair located on the corner of West 18th and Sassafras Streets, where Plaintiff and Chaz were observed roughhousing in the parking lot while Plaintiff was pumping gas. (Id. at ¶¶ 6-9). Although Plaintiff claims that he and Chaz were just engaging in "horse-play," the skirmish caused a concerned Country Fair employee to call the police. (Id. at ¶ 10). After the skirmish, Plaintiff and his three passengers got back into the vehicle and proceeded west on 18th Street, at which time officer dispatch informed officers in the area that a large white truck left the Country Fair parking lot. (Id. at ¶¶ 12-13).

While sitting in his police car in a nearby parking lot at the corner of 18th and Cherry Streets, Defendant Cousins observed a large white truck driving west on 18th Street and began following the vehicle. (Id. at ¶¶ 14, 16-17). Plaintiff turned north on Poplar Street and parked his vehicle. (Id. at ¶ 20). Plaintiff and his three passengers then exited the vehicle at the same time, and Plaintiff walked northbound down the sidewalk and through an alleyway with "[Chaz'] girl cousin," who had returned to the vehicle to retrieve her coat. (Id. at ¶¶ 24, 26). Defendant Cousins followed Plaintiff and one passenger into the alleyway, but could only locate the female passenger, not the Plaintiff. (Id. at ¶¶ 27-28). After searching yards for Plaintiff, Defendant Cousins returned to Plaintiff's vehicle. (ECF No. 49-4, Cousins deposition transcript, at p. 24).

In the meantime, Officer Deluca responded to the dispatch call and immediately recognized Plaintiff's vehicle. (ECF No. 42-1, at ¶ 29). Both Defendant Cousins and Officer Deluca conducted a plain view observation of the vehicle and reported observing marijuana in the front of the vehicle. (Id. at ¶¶ 30-31). As a result, Defendant Cousins called to have the vehicle towed. (Id. at ¶ 32). At this time, Plaintiff was at Luigi's Bar and Grill on the corner of

3

West 18th and Liberty Streets, less than one block away (Id. at ¶ 34, 36). Plaintiff recalls looking through the door of Luigi's and noticing that his vehicle was gone. (Id. at ¶ 38). Plaintiff then recalls walking to his son's mother's home to retrieve his son's phone and to ask for a ride back to his father's house. (Id. at ¶ 40). On the ride to his father's house Plaintiff called the police to report his vehicle stolen. (Id. at ¶ 41).

When Defendant Cousins returned to the police station after having Plaintiff's vehicle towed, he was informed that Plaintiff had just reported his vehicle stolen. (Id. at ¶ 43). Defendant Williams was made aware that Plaintiff's vehicle had been towed and then proceeded to Plaintiff's home to interview Plaintiff regarding his stolen vehicle report. (Id. at ¶¶ 44-45). During the interview, Plaintiff completed and signed an affidavit of vehicle theft, on which he erroneously indicated that he was in Reno's Place at 18th and Walnut Streets at the time of the alleged theft. (ECF No. 44-2, at p. 2). The next day, Plaintiff voluntarily went to the police station to provide a statement about his stolen vehicle and submitted to a videotaped interview. (ECF No. 42-1, at ¶¶ 47-48). After the interview Plaintiff was informed that his vehicle had been towed and that his three passengers had been arrested "with marijuana." (Id. at ¶¶ 50, 52; ECF No. 49-1, Plaintiff's deposition transcript, at p. 10 (internal p. 54)).[3]

On October 29, 2014, Plaintiff was charged with possession of marijuana and disorderly conduct. (ECF No. 42-1, at ¶ 58; ECF No. 46-1, at p. 3). The charges were later reduced to disorderly conduct, to which Plaintiff pleaded guilty. (Id. at ¶ 60). On or about October 31, 2014, Plaintiff was also charged with false reports and unsworn falsification to authorities stemming

---

[3] The Court is deeply troubled by the fact that Defendant Williams knowingly failed to inform Plaintiff that his car had been impounded when he interviewed Plaintiff on the night Plaintiff reported the vehicle stolen. By failing to so inform Plaintiff, Defendant Williams tacitly encouraged Plaintiff to pursue his stolen vehicle claim, which ultimately led to the criminal charges being challenged in this case. Such behavior borders on entrapment.

4

from his stolen vehicle report. (ECF No. 42-1, at ¶ 61; ECF No. 44-1, at p. 3). After a trial by jury, Plaintiff was found guilty of false reports to authorities. (ECF No. 42-1, at ¶ 62).

Plaintiff appealed his conviction to the Pennsylvania Superior Court, which vacated Plaintiff's sentence and remanded for further proceedings. ((Id. at ¶¶ 63-64; ECF No. 47-3). The Superior Court found that the trial court erred when it refused to admit evidence of a prior lawsuit Plaintiff previously filed in federal court against Defendant Cousins and Officer William Goozdich (Defendant Goozdich's son), which the Court found to be relevant evidence of possible bias on the part of Defendant Cousins. (Id. at ¶¶ 65-66; ECF No. 47-3, at p. 7). Upon remand, the District Attorney filed a Motion to *Nolle Prosequi* the charges against Plaintiff "on the basis of judicial economy, office resources, and the interests of justice overall," noting that Plaintiff "ha[d] already served at least the minimum of 6 months incarceration" on the vacated sentence. (ECF No. 47-4, at ¶ 5). An Order granting the *nolle prosequi* motion was signed by the Honorable Daniel Brabender of the Erie County Court of Common Pleas, on November 16, 2017. (Id. at p. 3).

## II. DISCUSSION

### A. Malicious Prosecution

To establish a malicious prosecution claim under 42 U.S.C. § 1983, Plaintiff must show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007), citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

Here, Defendants argue that Plaintiff is unable to establish a malicious prosecution claim, as a matter of law, because, *inter alia,* he cannot show that the underlying criminal proceeding ended in his favor. The Court agrees.

While a grant of *nolle prosequi* "may be sufficient to satisfy the favorable termination element, not all cases resolved by the filing of such a motion are deemed to have been terminated in the plaintiff's favor." Dayoub v. Aaron, 2013 WL 4810382, at *6 (W.D.Pa. Sept. 9, 2013), citing DiFronzo v. Chiovero, 406 Fed. Appx. 605, 608 (3d Cir.2011) (citing Hifirty v. Shipman, 91 F.3d 573, 579–80 (3d Cir. 1996)). To the contrary, the circumstances giving rise to the final disposition must be capable of sufficiently supporting a finding of actual innocence before it can be said that the charges have terminated in the plaintiff's favor. See Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000) ("[A] plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."); Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002) (when a prosecutor abandons criminal charges against the accused, it will be considered a favorable termination "only when their final disposition is such as to indicate the innocence of the accused")

In Donahue, the District Attorney sought to *nol pros* the charges against the plaintiff, reasoning that the plaintiff was not likely to receive any additional jail time if convicted in a retrial and, therefore, a *nol pros* was "in the interest of judicial economy and [would] preserve scarce judicial resources." Donahue, 280 F.3d at 384. In view of this reasoning, the Third Circuit found that "[f]ar from indicating [plaintiff's] innocence, the *nol pros* merely reflected an informed and reasoned exercise of prosecutorial discretion as to how best to use … limited resources." Id. The same holds true here, as the reasons stated in the District Attorney's Motion to *Nolle Prosequi* are virtually identical to those provided in Donahue. Moreover, Judge

6

Brabender's Order granting the *nol pros* fails to support a finding of innocence, as it merely grants the motion without further elaboration. See DiFronzo, 406 Fed.Appx. at 609 (concluding that the criminal charges filed against the plaintiff were not terminated in his favor because the order granting the motion seeking *nolle prosequi* did not indicate the plaintiff's innocence, as it said nothing as to why the motion was filed or granted).

For these reasons, Plaintiff is unable to satisfy the favorable termination element of his malicious prosecution claim and summary judgment will, thus, be granted in favor of Defendants and against Plaintiff on this claim.

### B. Conspiracy

To establish a claim of conspiracy in the context of a civil rights action, the plaintiff must show that two or more conspirators reached an agreement to deprive him of a constitutional right. Royster v. Beard, 308 Fed. Appx. 576 (3d Cir. 2009). Here, Plaintiff claims that Defendants Williams and Goozdich "conspired with [Defendant] Williams to maliciously prosecute [him]…." (ECF No. 5, Complaint, at ¶ 24). Since this Court has already determined that Plaintiff is unable to prove the underlying claim of malicious prosecution as a matter of law, Plaintiff is consequently unable to establish a cognizable conspiracy claim.

An appropriate Order follows.